UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DALE ROGER SINGLETON, CLAUDE RANDALL SINGLETON, and BRUCE WAYNE SINGLETON, | ) ) ) | |
| | ) | Civil No. 15-15-GFVT |
| Plaintiffs, | ) ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| COMMONWEALTH OF KENTUCKY, et al., | ) ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Mary Singleton, the mother of the Plaintiffs ("the Singletons"), purchased an annuity in an effort to obtain long-term care Medicaid benefits for her husband Claude. The Singletons allege their mother, now deceased, was forced to structure her annuity to comply with directives of the Kentucky Cabinet for Health and Family Services, Department for Medicaid Services. The Singletons believe the directives violate the United States and Kentucky Constitutions. Accordingly, the Singletons have filed a petition for declaratory relief, a petition for injunctive relief, and a complaint for damages pursuant to 42 U.S.C. § 1983.

The Commonwealth of Kentucky, Kentucky Cabinet for Health and Family Services, Kentucky Department for Medicaid Services, former Branch Manager Marchetta Carmicle, current Secretary Audrey Tayse Haynes, and John Does 1 through 5 have filed motions to dismiss, or in the alternative, motions for summary judgment. As explained below, the Court will dismiss some, but not all, of the Plaintiffs' claims.

# I

## A

In September 2009, Mary Singleton and Claude Singleton—the parents of the three Plaintiffs—engaged the services of elder care law firm McClelland & Associates, PLLC, to assist in obtaining long-term care Medicaid benefits for Claude Singleton.[1]  At the time, Claude Singleton was institutionalized in a full-time nursing home.  Mrs. Singleton was advised that it was in her family's best interests to purchase an annuity benefiting herself as annuitant.  Soon thereafter, Mary did in fact purchase an annuity from Genworth Life and Annuity Insurance Company ("Genworth") with a single premium investment amount of $220,000.  However, she did not structure it on behalf of herself as annuitant, as the Singletons claim she originally desired to do.  The statutory framework at issue here explains why.

In 2005, Congress passed the Deficit Reduction Act.  Pursuant to the Deficit Reduction Act of 2005, the language of 42 U.S.C. § 1396p(c)(1)(F) provided:

> (F) For purposes of this paragraph, the purchase of an annuity shall be treated as the disposal of an asset for less than fair market value unless –
>
> (i) the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid *on behalf of the annuitant* under this title . . . .

42 U.S.C. § 1396p(c)(1)(F) (2005) (emphasis added).  In line with the federal statute, Kentucky adopted essentially identical regulatory language:

> In accordance with 42 U.S.C. 1396p(c)(1)(F), the purchase of an annuity occurring on or after February 8, 2006 shall be treated as the disposal of assets for less than fair market value unless the cabinet is named: [. . .] (1) As the remainder beneficiary in the first position for at least the total amount of medical assistance paid *on behalf of the annuitant* . . . .

---

[1] This factual summary of the case draws from the facts set forth in the Plaintiffs' amended complaint. [*See* R. 27.]

2

907 KAR 1:650 § 2(9)(b)(1) (emphasis added).  Shortly thereafter, Congress passed the Tax

Relief and Health Care Act of 2006.  This Act amended 42 U.S.C. § 1396p(c)(1)(F) to read:

> (F) For purposes of this paragraph, the purchase of an annuity shall be treated as the disposal of an asset for less than fair market value unless –
>
> (i) the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid *on behalf of the institutionalized individual* under this title . . . .

42 U.S.C. § 1396p(c)(1)(F) (2006) (emphasis added).  Significantly, the relevant Kentucky

regulation was not in turn amended.

When Mary Singleton purchased her annuity, she desired to name the State as the

"irrevocable primary beneficiary to the extent of the total amount of medical assistance paid on

behalf of the annuitant, Mary Singleton," as permitted by the language of 907 KAR 1:650

§ 2(9)(b)(1).  However, Mary's attorneys at McClelland & Associates "had been informed

repeatedly and unequivocally" that the state would not approve Medicaid applications drafted in

this way.  Instead, counsel believed that Defendant Marchetta Carmicle—Branch Manager for

the Kentucky Department of Medicaid Services Eligibility Policy Branch—would declare those

annuities to be transfers of resources for less than the fair market value, which would trigger a

period of ineligibility for long-term Medicaid benefits.  [*See* R. 27 at 7.]  Carmicle allegedly

required annuities to name the State as the irrevocable primary beneficiary to the extent of the

total amount of medical assistance paid on behalf of the institutionalized individual, pursuant to

the language of the Tax Relief and Health Care Act of 2006.

Because of this, Mary Singleton did not draft her annuity the way she initially desired.

As a result of Defendant Carmicle's alleged policy, Mary designated the irrevocable primary

beneficiary of her annuity as "the Kentucky Department of Medicaid Services to the extent of

benefits paid for Claude L. Singleton," the institutionalized individual.  Mary named her sons,

the three Plaintiffs, as the secondary beneficiaries of the annuity.

Mary Singleton passed away on February 8, 2014.  At that time, no money had been paid by the Kentucky Department of Medicaid Services on behalf of Mary Singleton.  However, $98,729.01 had been paid on behalf of Claude Singleton.  Under this combination of facts, the Singletons as secondary beneficiaries received less money than they would have had Mary Singleton drafted her annuity as she originally desired, pursuant to the language found in 907 KAR 1:650 § 2(9)(b)(1), which mirrors the Deficit Reduction Act of 2005 language prior to the 2006 amendments.

The Singletons assert that a State's methodology for determining income and resource eligibility for individuals seeking to enroll in Medicaid "may be less restrictive" than the federal regulations.  [R. 27 at 6 (citing 42 U.S.C. § 1396a(r)(2)(A).]  They, therefore, argue that the 2006 amendment to 42 U.S.C. § 1396p(c)(1)(F) did not result in preemption of 907 KAR 1:650 § 2(9)(b)(1), and that Marchetta Carmicle improperly instituted a policy of rejecting applications drafted pursuant to the regulation rather than the federal statute.

The Singletons filed suit on January 29, 2015.  [*See* R. 1-4; R. 27.]  Ultimately, they argue the Defendants should not be allowed to recover any funds from Mary Singleton's annuity in excess of the amount of money that the Commonwealth paid on behalf of Mary, the annuitant, thereby attempting to hold the Commonwealth to the "less restrictive" language of 907 KAR 1:650 § 2(9)(b)(1).  [*See* R. 27 at 16.]  All of the Defendants, save Genworth,[2] have moved to dismiss all claims, or in the alternative, for summary judgment.

---

[2] Defendant Genworth has filed a counter-claim complaint for interpleader and declaratory relief against the Singletons and all of the other Defendants, seeking guidance from the Court as to the appropriate distribution of the remaining annuity funds.  [R. 5 at 14.]

**II**

**A**

The Defendants raise various grounds for dismissal—some threshold issues, some merits-based or substantive arguments.  Though the Defendants style their motions as motions to dismiss, or, in the alternative, motions for summary judgment, the Court considers the motions solely pursuant to Federal Rule of Civil Procedure 12(b), as no discovery has occurred and the parties do not refer to any matters outside of the pleadings.  *See, e.g., Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971); Fed. R. Civ. P. 12(d) (explaining that, where matters outside the pleadings are considered by the Court, the motion is treated as one for summary judgment under Rule 56 rather than under Rule 12(b)(6)).  With this in mind, the Court begins by addressing one of the threshold issues raised in the Defendants' motions—the Singletons' alleged lack of standing to bring the instant lawsuit.

"The issue of standing, and whether a federal court has power to adjudicate a suit, is 'the threshold question in every federal case.'"  *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  "To satisfy the 'case' or 'controversy requirement' of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted).  Further, "a plaintiff must also establish, as a prudential matter, that he or she is the proper proponent of the rights on which the action is based."  *Haskell v. Washington Township*, 864 F.2d 1266, 1275 (6th Cir. 1988) (citations omitted).

As the Sixth Circuit has emphasized, "standing in no way depends upon the merits of the plaintiff's contention that the particular conduct is illegal." *Id.* (quoting *Warth*, 422 U.S. at 500). "Standing is a threshold inquiry; it requires focus on the party seeking to have his complaint heard in federal court, and it eschews evaluation of the merits. The court is not to consider the weight or significance of the alleged injury, only whether it exists." *Id.* (quoting *Coalition for the Environment v. Volpe*, 405 F.2d 156, 168 (8th Cir. 1974)).

As an initial matter, the Court notes the Singletons have filed suit both in their individual capacities and as the co-administrators of Mary Singleton's estate. Sixth Circuit law clearly instructs that causes of action brought pursuant to 42 U.S.C. § 1983 are "entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984)). "Accordingly, only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim. . . . [N]o cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Id.*

After careful consideration of the Singletons' complaint and subsequent briefing, the Court determines the direct victim in this case is not the Singletons but, rather, their mother Mary Singleton herself. Mary is the party who initially wished to purchase an annuity in conformity with the language of 907 KAR 1:650 § 2(9)(b)(1). [R. 27 at 6.] Mary is the one who was informed that Kentucky CHFS/DMS would reject that type of annuity as a result of a policy allegedly adopted by Defendant Marchetta Carmicle. [*Id.* at 6-9.] And Mary is the person who actually purchased an annuity structured contrary to her personal desires. [*Id.*] The Singletons are merely the secondary beneficiaries of the annuity, who are now unable to recover as much

6

money as they would otherwise receive if the Cabinet allowed annuities drafted pursuant to the language of 907 KAR 1:650 § 2(9)(b)(1).  [*Id.* at 9-10.]  These facts suggest Mary is the direct victim of the Defendants' alleged unconstitutional behavior for purposes of the § 1983 claims. The Singletons' injuries—the deprivation of the $98,729.01 they contend is now legally payable to them—are more appropriately considered "other consequent collateral injuries" under precedential case law.  *See Claybrook*, 199 F.3d at 357.  Therefore, the § 1983 claims brought by the Singletons in their individual capacities are properly dismissed for lack of standing.

However, the Singletons have standing for the § 1983 claims brought in their capacities as co-administrators of their mother's estate.  *See id.* (explaining that only the victim "or his estate's representative(s)" may bring a § 1983 claim).  Initially, the Court notes the Defendants' arguments for dismissal on lack of standing grounds focus solely on the Singletons' personal lack of standing and not on whether or not they could assert the constitutional claims on behalf of Mary herself.  [*See, e.g.*, R. 31-1 at 25 (maintaining the complaint addresses solely "hypothetical issues" raised by Mrs. Singleton's "disappointed heirs").]

Moreover, the requirements of both Article III and the prudential standing doctrines are satisfied in this case.  The Singletons allege that, as a result of an unconstitutional policy, Mary Singleton's estate is now deprived of $98,729.01.  This financial deprivation constitutes the type of concrete and actual "injury in fact" required under Article III.  *See Lujan*, 504 U.S. at 560-61. The injury is fairly traceable to the Defendants, because were it not for Defendant Carmicle's alleged policy, the state's interest in the annuity upon Mary's death would have been $0.00.  The injury is also redressable, as the Singletons seek injunctive relief and a declaration of rights that would result in the $98,729.01 being paid to the annuity's secondary beneficiaries rather than to the Commonwealth.  *See id.*

7

Furthermore, prudential standing exists because Mary Singleton's estate is "the proper proponent of the rights on which the action is based." *See Haskell*, 864 F.2d at 1275.  A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499.  *See also Planned Parenthood*, 822 F.2d at 1394.  While the Singletons in their individual capacities may not have satisfied the prudential bar against third party standing, the Singletons as co-administrators of their mother's estate are properly before the Court in this case.  *See Claybrook*, 199 F.3d at 357.

## B

The Defendants also argue the Singletons' lawsuit is time-barred by a one year statute of limitations.  Although Congress has not legislated a specific statute of limitations period for § 1983 actions, courts characterize § 1983 claims as personal injury actions and impose applicable state statutes of limitations.  *Collard v. Kentucky Board of Nursing*, 896 F.2d 178, 180 (6th Cir. 1990) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)).  In Kentucky, KRS § 413.140(1)(a) applies to § 1983 actions and does indeed impose, as Defendants contend, a one year statute of limitations.[3]  *Id.* at 182.

The Plaintiffs do not dispute that this one year time period applies.  [*See* R. 35 at 18.] They disagree, however, as to when, exactly, the clock began running.  [*Id.*]  According to the Defendants, the statute began running on September 9, 2009, the date Mary Singleton purchased the irrevocable annuity forming the basis of this lawsuit.  On that date, Mary officially named the State as the annuity's primary beneficiary to the extent of the medical benefits paid on behalf of her husband Claude, and she allegedly did so against her wishes.  Thus, they allege it would have

---

[3] According to KRS § 413.140, "The following actions shall be commenced within one (1) year after the cause of action accrued: (a) An action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice, or servant . . . ."

been reasonably foreseeable that the ultimate injury—her secondary beneficiaries' deprivation of the more than $98,000 the Commonwealth paid on behalf of Claude—would one day occur.  By contrast, the Plaintiffs maintain the statute did not start running until Mary Singleton's death on February 8, 2014, when, for the first time, the total amount of medical assistance paid on behalf of Mary Singleton could be ascertained.  The lawsuit was initially filed in state court on January 29, 2015.  Therefore, under the Defendants' view, the Singletons' claims would be untimely.

"[F]ederal law and not state law is relevant for the purpose of characterizing a section 1983 claim.  Accordingly, federal law governs the question of when that limitations period begins to run."  *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988) (internal citations omitted).  The Sixth Circuit has explained that the relevant statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Id.* (citing *Sevier v. Turner*, 742 F.2d 262, 272-73 (6th Cir. 1984)).

Lacking case law on point, both sides attempt to argue by analogy.  The Defendants rely on *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984).  In that case, the Sixth Circuit considered whether a plaintiff's § 1983 claim was time-barred where the plaintiff contested a Tennessee judge's allegedly unlawful practice of obtaining consent orders from fathers obligated to pay child support.  *Id.* at 265. While plaintiff Sevier attempted to argue the one year statute of limitations did not begin running until he was informed by a legal aid attorney that he had a federal claim, the court determined the statute began running when Mr. Sevier signed the allegedly unlawful consent order.  *Id.* at 272-73.  The court reasoned:

> We hold that for purposes of a civil damages claim, the plaintiff had reason to
> know that his legal rights were being violated when the defendants extracted his

signature to the consent order in July 1977. A person exercising reasonable diligence would expeditiously attempt to determine the validity of a legal document signed in response to threats of criminal prosecution and would not wait over four years before initially consulting legal counsel about the matter.

*Id.* at 273.

The Singletons, by contrast, liken their case to a regulatory takings claim. Where a plaintiff alleges the "taking of a contractual right," they argue, the claim does not accrue until "all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action." *Royal Manor, Ltd. v. United States*, 69 Fed. Cl. 58, 61-62 (Fed. Cl. 2005). They contend their claim did not become a definite and certain justiciable controversy until Mary's death, when the Commonwealth began asserting its right to the funds in Mary's annuity that exceed the amount paid on behalf of her as the annuitant.

Following the Sixth Circuit's language in *McCune* and *Sevier*, the Court determines the Singletons did not know or have reason to know of the Commonwealth's potentially unlawful claim to the annuity funds until Mary passed away. *McCune*, 842 F.2d at 905; *Sevier*, 742 F.2d at 272-73. The nature of an annuity is such that the funds remaining for either the primary or the secondary beneficiaries are contingent on the lifespan of the annuitant. Had Mary Singleton attained a certain age before death, the funds would have been paid back to her in their entirety and no money at all would be left for the State or the Singletons. Thus, the Singletons, who held merely a possible residual benefit from the annuity, could not be reasonably expected to know of the alleged injury before Mary died or to somehow investigate a potential future constitutional claim. The Singletons as secondary beneficiaries did not share the same duty as the plaintiff in *Sevier*, who himself signed the document leading to an alleged unconstitutional deprivation. *See Sevier*, 742 F.2d at 273. At the time Mary signed the annuity, the Singletons did not yet know, and could not have known, that the State would ultimately pay $0.00 for medical care on behalf

10

of Mary but $98,729.01 for medical care on behalf of Claude.  Only upon Mary's death did the amount of annuity money to be paid to the beneficiaries become fixed, and only then did the Singletons' injury manifest itself so as to cause the one year statute of limitations to begin to run.

Notably, the Sixth Circuit has recognized the important policies that are furthered by statutes of limitations, such as "encouraging plaintiffs to pursue claims diligently and protecting defendants from stale claims."  *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1135 (6th Cir. 1995).  These policies are furthered by the Court's finding, as the Singletons could not have pursued their claims against the Defendants prior to Mary Singleton's passing.  Because the Court determines the clock began running on the Singletons' claims when their mother died rather than when she signed the annuity, the lawsuit is not time-barred as the Defendants contend.

Notwithstanding this determination, the Defendants allege all claims against Secretary Audrey Tayse Haynes and the five John Doe Defendants should be dismissed as untimely.  [*See* R. 33-1 at 23-24.]  These six Defendants were not added as parties to the lawsuit until June 12, 2015, when the Court granted the Singletons' motion for leave to file an amended complaint.  [*See* R. 1-4 at 3; R. 26; R. 27.]  Thus, even though the statute of limitations did not begin running until Mary Singleton's death, these parties were added outside of the one year time period.  Sixth Circuit case law and Federal Rule of Civil Procedure 15(c) which governs the relation-back of amendments indicate the Defendants are partially correct in their arguments.  The Singletons' claims against Secretary Haynes relate back to the original complaint for statute of limitations purposes, but the claims against the John Doe Defendants do not.

Federal Rule of Civil Procedure 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when:

(A)  the law that provides the applicable statute of limitations allows relation back;

(B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).  In general, "the precedent of this circuit clearly holds that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations."  *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (internal quotation marks omitted) (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973)).  When the Singletons filed their amended complaint, the five John Does were brought into the lawsuit for the first time.  [*Compare* R. 1-4 *with* R. 27.]  Accordingly, these new parties do not relate back to the Singletons' original complaint for purposes of the one year statute of limitations, and all of the Singletons' claims against John Does 1 through 5 are properly dismissed.  *See Asher*, 596 F.3d at 317-320.

The effect of the Singletons' amended complaint on Secretary Haynes, however, is distinct.  In the original complaint, the Singletons named the Cabinet for Health and Family Services as a Defendant but did not name Secretary Haynes personally; however, the Singletons achieved service of process on the Cabinet by serving Secretary Haynes.  [*See* R. 1-4.]  Now, the

amended complaint purports to name Secretary Haynes in her individual capacity as well as her official capacity as Secretary of CHFS. [*See* R. 27 at 1.] Naming Secretary Haynes in her individual capacity has the effect of adding a new party to the action; accordingly, any claims against Haynes in her individual capacity should be dismissed.[4] However, naming Secretary Haynes in her official capacity did not effectively add a new party to the suit.

In general, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Put simply, a lawsuit against Secretary Haynes in her official capacity is treated as a lawsuit against the Cabinet for Health and Family Services itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166 (emphasis in original) (internal citation omitted). Accordingly, Secretary Haynes "knew or should have known" that the action would name her in her official capacity, as suing state officials is a plaintiff's mechanism for seeking relief against the state and its agencies. *Id.*; Fed. R. Civ. P. 15(c)(1)(C)(ii). The Singletons' claims against Secretary Haynes in her official capacity, therefore, survive the Defendants' arguments regarding untimeliness.

## C

In addition to the threshold standing and statute of limitations issues, the Defendants seek

---

[4] Although the first page of the amended complaint names Secretary Haynes as a Defendant in both her official and individual capacities, the Singletons do not request any relief from Haynes in her individual capacity, naming her only as an official party to their claims for declaratory and injunctive relief. [*See* R. 27 at 1, 17.] To the extent the Singletons did, in fact, desire to assert claims against Haynes in her individual capacity, those claims are hereby dismissed.

dismissal pursuant to Federal Rule of Civil Procedure 19, which governs the joinder of parties. Federal Rule of Civil Procedure 12(b)(7) provides that a defendant may assert failure to join a party under Rule 19 as a defense.  Here, the Defendants allege the Singletons improperly failed to join Mary Singleton's attorneys from McClelland & Associates, the federal Secretary of Health and Human Services, and the federal Centers for Medicare and Medicaid Services.  [R. 31-1 at 26; R. 33-1 at 24.]  The Defendants deem these parties to be necessary and indispensable to the action.  For the following reasons, however, the Court disagrees.

Courts use a three-part test to determine whether or not a case should proceed in the absence of a particular party.  *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001).  First, the Court must determine whether the party is "necessary" under Rule 19(a).  *Id.*  If the party is deemed necessary pursuant to Rule 19(a), the Court must also consider whether the person is subject to service of process and if his joinder will deprive the court of subject matter jurisdiction.  *Id.*; Fed. R. Civ. P. 19(a).  Third, "if a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

In this case, Mary Singleton's attorneys from McClelland & Associates are not necessary parties under Rule 19(a).  Rule 19(a) instructs that a party's presence is necessary or required if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

14

Fed. R. Civ. P. 19(a). While the Defendants allege the Singletons' action is really a legal malpractice case in disguise, the Court can, in fact, accord complete relief for the parties in the absence of the lawyers. *See* Fed. R. Civ. P. 19(a)(1)(A). The Singletons have indicated the McClelland & Associates attorneys informed Mrs. Singleton of the Defendants' policy of rejecting annuities structured pursuant to 907 KAR 1:650 § 2(9)(b)(1). [*See* R. 27 at 8-9.] The attorneys' role as mere messengers does not require their presence as co-defendants. The Defendants may take issue with the counsel the attorneys provided to Mrs. Singleton, but the Singletons' § 1983 claims and petition for equitable relief exist apart from the attorneys' advice. Further, the attorneys have not claimed an interest related to the subject of this action. *See* Fed. R. Civ. P. 19(a)(1)(B). Because the attorneys are not considered "necessary" or "required" parties under the rule, the Court need not continue the analysis. *See PaineWebber*, 276 F.3d at 200; Fed. R. Civ. P. 19.

Similarly, the Secretary of Health and Human Services and the federal Centers for Medicare and Medicaid Services ("CMS") are not necessary parties under the rule. Defendant Carmicle asserts "the Secretary of Health and Human Services and CMS have a stake in defending Plaintiffs' claims that the mere failure of a state to amend a state Medicaid regulation could preempt the applicable federal law." [R. 31-1 at 26.] The remaining Defendants go on to maintain the "federal government would also have a practical interest in knowing that state agencies could preempt federal law in the manner Plaintiffs allege was done in this case. Which means the HHS Secretary and CMS should be deemed necessary parties if this case proceeds further." [R. 33-1 at 24.] Beyond these two statements, the Defendants neither cite instructive case law nor explain how or why the Secretary and CMS fall within the scope of Rule 19. This limited argumentation does not convince the Court that the lawsuit should be dismissed for the

Singletons' failure to join the federal parties.

Like Mary Singleton's attorneys, the Secretary of Health and Human Services and the federal Centers for Medicare and Medicaid Services are not necessary parties. Going forward, this Court is capable of determining whether federal Medicaid law preempted the "less restrictive" Kentucky regulation in question without the involvement of the Secretary or CMS. Similarly, this Court or a jury will be able to determine whether any constitutional violation has occurred without the proposed defendants' involvement. Thus, the Singletons may be accorded complete relief as the lawsuit currently stands. *See* Fed. R. Civ. P. 19(a)(1). While the Defendants allege the federal parties "have a stake" in the case and "would have a practical interest" in knowing the lawsuit's outcome, the potential defendants have not themselves claimed an interest in the litigation pursuant to Rule 19. [*See* R. 31-1 at 26; R. 33-1 at 24.] Beyond the Defendants' bare assertions, there is no indication that they do, in fact, have an interest in a future Court determination or jury verdict such that Rule 19(a)(1)(B) would be satisfied.

"[R]ule [19] is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case." *Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1346 (6th Cir. 1993). Further, "[f]ederal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1609 (3d ed. 2015). As this case is not one which cannot proceed in the absence of the proposed defendants, the Defendants' arguments under Rule 19 and Rule 12(b)(7) fail.

16

**D**

Finally, the Defendants argue for dismissal under Federal Rule of Civil Procedure 12(b)(6), maintaining the Singletons' complaint fails to satisfy federal pleading requirements and fails to state any claim upon which relief may be granted. "The purpose of a Rule 12(b)(6) motion is to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Campbell v. Nationstar Mortgage*, 611 F. App'x 288, 291 (6th Cir. 2015) (internal quotations omitted). When reviewing a Rule 12(b)(6) motion, the Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 716 (6th Cir. 2005). To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

As is now well known, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In amassing sufficient factual matter, plaintiffs need not provide "detailed factual allegations," but must advance "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "a formulaic recitation of the elements of a cause of action." *Id*. (citing *Twombly*, 550 U.S. at 555). Though courts must accept all factual assertions as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Twombly*, 550 U.S. at 556). Thus, it is incumbent upon the Court to first sort through the plaintiff's complaint and separate the factual allegations, which are accepted as true and contribute to the viability of the plaintiff's claim, from the legal conclusions that are only masquerading as facts and need not be accepted.

Once the Court has discarded the legal conclusions, the question becomes whether the remaining facts actually state a plausible claim for relief.  Plaintiffs do not succeed in making a claim plausible by adorning their complaints with facts creating a "sheer possibility that a defendant has acted unlawfully" or facts that are "merely consistent with a defendant's liability." *Id*. (citing *Twombly*, 550 U.S. at 557).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

The Defendants maintain each of the Singletons' claims should be dismissed against every remaining Defendant.  For clarity, then, the Court walks through each of the Singletons' claims against each of the Defendants and explains below why some, but not all, of the Singletons' claims survive the pending motions to dismiss.

**1**

First, the Singletons seek money damages against Defendant Marchetta Carmicle in her individual capacity with respect to the five § 1983 claims, the alleged violation of KRS § 205.6322, and the alleged violation of Sections 1, 2, 10, and 13 of the Kentucky Constitution. [R. 27 at 17.]  The Singletons essentially concede they may not recover damages for a violation of the Kentucky Constitution.  [*See* R. 35 at 35-36.]  But as for the other damages claims, Carmicle argues she is immune as a result of both absolute and qualified immunity.  The Court finds that her argument for absolute immunity fails and that her argument for qualified immunity is better suited for analysis at a later point in the litigation.

Ms. Carmicle's argument for absolute immunity is a mere three sentences.  [R. 31-1 at 32.]  She asserts that Internal Revenue Service agents are afforded absolute immunity for their interactions with taxpayers under Sixth Circuit law.  [*Id.* (citing *Granger v. Marek*, 583 F.2d 781,

782 (6th Cir. 1978).]  She then maintains that if she "had actually interacted with Mary Singleton with respect to blessing her annuity or giving Medicaid planning advice, Carmicle would be absolutely immune for the same reasons federal tax agents are immune from suit."  [*Id.*]  Defendant Carmicle has not provided any support for her assertion that her role is akin to that of an IRS agent for immunity purposes, and, further, Carmicle misstates the Sixth Circuit's holding in *Granger*.

While Carmicle relies upon *Granger* to claim absolute immunity in this § 1983 action, the *Granger* court clearly stated that the district court's granting of absolute immunity to the IRS agents in question was proper only where the agents committed *common law torts*.  *Granger*, 583 F.2d at 782-84.  The plain takeaway from *Granger* as it relates to the matter at hand is the Sixth Circuit's recognition of the Supreme Court case *Butz v. Economou*, wherein the Supreme Court held "there was only a qualified immunity from damages liability for federal executive officials charged with constitutional violations, absent some special showing of need for a full exemption from liability," such as when performing judicial-type functions.  *See id.* at 784 (citing *Butz v. Economou*, 438 U.S. 478 (1978)).  Thus, Defendant Carmicle's conclusory argument for absolute immunity fails, as Carmicle offers no special showing of need and does not assert she acted in any sort of judicial capacity with regard to Mary Singleton.  *See id.*; *see also Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) (explaining absolute immunity is typically limited to the performance of functions which are "integral to the functioning of our adversarial judicial system," and noting that "the official seeking absolute immunity bears the burden of showing that such immunity is justified" in the case at hand).

Ms. Carmicle also seeks qualified immunity from the Singletons' claims for damages brought against her in her individual capacity.  Federal qualified immunity "protects government

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). However, because the Court treats the Defendants' motions as Rule 12(b) motions to dismiss, the applicability of Ms. Carmicle's qualified immunity defense is best addressed at a future stage of the proceedings.

While defendants claiming qualified immunity typically do so early on in a lawsuit, the Sixth Circuit has clarified that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). *See also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 234 (6th Cir. 2005) (Sutton, J., concurring) (noting it is ordinarily "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*.") (emphasis in original); *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) (finding that "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). A defendant may be able to use Rule 12(b)(6) to claim qualified immunity when, for example, a plaintiff "sets out a 'claim' . . . yet narrates facts showing that it is impossible to award relief." *Jacobs*, 215 F.3d at 775. Further, pleaded facts "designed to skirt around immunity may reveal the claim's substantive weakness and justify dismissal on the merits." *Id. See also Bloch v. Ribar*, 156 F.3d 673, 687 (6th Cir. 1998) (noting that, at the pleading stage, plaintiffs are at least "required to plead with enough specificity to create a foundation for recovery against the defense of qualified immunity"); *Goad v. Mitchell*, 297 F.3d 497, 505 (6th Cir. 2002) (holding that, in order to defeat a qualified immunity defense in cases requiring proof of wrongful motive, plaintiffs must at least plead "nonconclusory allegations of fact . . . that provide circumstantial evidence of improper intent.").

In this case, the Singletons allege the Kentucky Cabinet for Health and Family Services, Department for Medicaid Services unlawfully refused to follow 907 KAR 1:650 § 2(9)(b)(1), instead allowing Marchetta Carmicle to reject all annuities naming the State as the primary beneficiary for expenses paid on behalf of the annuitant.  [R. 27 at 7.]  As evidence, they provide a memorandum from Marchetta Carmicle purporting to show her adoption of the allegedly unlawful rejection policy.[5]  [*See* R. 27-1.]  The Singletons also allege that this practice was unlawful pursuant to 42 U.S.C. § 1396a(r)(2)(A)-(B), which allows a State's Medicaid methodology to be "less restrictive" than federal regulations.  Whether or not their legal conclusions are true, the Singletons have set forth sufficient factual evidence to overcome Ms. Carmicle's qualified immunity defense at this stage.  As a result, the Singletons' claims for money damages against Carmicle in her individual capacity survive the Defendants' motions to dismiss.  Should Carmicle choose to raise a qualified immunity defense at a later point, the Court will then consider the merits of her argument.

### 2

The Singletons also seek declaratory and injunctive relief against all of the Defendants in their official capacities.  [*See* R. 27 at 17.]  While the Defendants are correct that some of these claims should be dismissed because of immunity, the Singletons' claims for relief against Secretary Haynes in her official capacity survives the Defendants' motions to dismiss.

The Court agrees with the Defendants that the declaratory and injunctive relief claims against Marchetta Carmicle in her official capacity should be dismissed.  Ms. Carmicle was employed by CHFS/DMS in 2009 when Mary Singleton purchased the annuity; however, she

---

[5] Though separate from the complaint itself, this document is considered a part of the pleadings and may properly be considered in a Rule 12(b) motion.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

retired from state employment on March 1, 2014. [*See* R. 31-1 at 3; R. 31-2.] The Plaintiffs

initially filed their lawsuit on January 29, 2015, after Ms. Carmicle retired. [R. 1-4 at 3.] A

claim against a government official in her official capacity is treated as a claim against the entity

that employs the officer. *See Graham*, 473 U.S. at 165-66. However, "[a] claim against a person

'in his former official capacity' has no meaning. If the claimant seeks to hold the offender

personally responsible, the claim is against the person in his individual capacity." *Mathie v.*

*Fries*, 121 F.3d 808, 818 (2d Cir. 1997). Because Carmicle is merely a former officer of

CHFS/DMS, any claims against her in her official capacity are empty and may properly be

dismissed.

The Court disagrees, however, that Eleventh Amendment immunity bars the Singletons'

declaratory and injunctive relief claims against each of the remaining Defendants. The Eleventh

Amendment provides "[t]he judicial power of the United States shall not be construed to extend

to any suit in law or equity, commenced or prosecuted against one of the United States by

Citizens of another State, or by Citizens of Subjects of a Foreign State." U.S. CONST. amend. XI.

The Sixth Circuit has described the application of the Eleventh Amendment as follows:

> This immunity is far reaching. It bars all suits, whether for injunctive, declaratory
> or monetary relief, against the state and its departments, by citizens of another
> state, foreigners or its own citizens. The amendment also bars suits for monetary
> relief against state officials sued in their official capacity. However, the
> amendment does not preclude actions against state officials sued in their official
> capacity for prospective injunctive or declaratory relief.

*Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations and

quotation marks omitted). The Sixth Circuit has further clarified the last sentence of that

explanation, which concerns the *Ex parte Young* exception to the Eleventh Amendment, by

stating:

> Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury.  It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.  The *Ex parte Young* exception does not, however, extend to any retroactive relief.

*S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (internal citations and quotation marks omitted).

The *Ex parte Young* exception "is not applicable to an action directly against the state or state agency, only against a state officer, and it cannot be used to compel a state officer to comply with state law."  *Beshear v. Haydon Bridge Co.*, 416 S.W.3d 280, 289 (Ky. 2013); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984).  Therefore, the Singletons' claims against the Commonwealth of Kentucky and CHFS/DMS itself cannot survive the Defendants' claims of Eleventh Amendment immunity.  *See id.; Thiokol Corp.,* 987 F.2d at 381.

To the extent the Singletons argue these parties waived their Eleventh Amendment immunity by removing this suit to federal court, the Court disagrees.  The circuit courts are split as to whether voluntarily removing a lawsuit to federal court constitutes a waiver of the state's immunity, in light of the Supreme Court's 2002 decision *Lapides v. Board of Regents*, 535 U.S. 613 (2002).  Although the *Lapides* court indicated a desire to "limit [its] answer to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings," *id.* at 617, some circuit courts view the case broadly and find *Lapides* "applies generally to any private suit which a state removes to federal court."  *See, e.g.*, *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 242-43 (5th Cir. 2005).  In the absence of clear Sixth Circuit precedent on the issue, this Court adopts a conservative approach and finds *Lapides* does not prevent the Defendants from asserting Eleventh Amendment immunity for federal claims which

they permissibly removed to federal court.  *See Burke v. Kentucky State Police*, No. 14-cv-00024-GFVT, 2016 WL 361690, at *3-5 (E.D. Ky. Jan. 27, 2016); *see also Crawford v. Lexington-Fayette Urban Cnty. Govt*., No. 06-299-JBC, 2007 WL 101862, at *4-6 (E.D. Ky. Jan. 10, 2007).

Further, to the extent the Singletons contend the Commonwealth is "is clearly subject to a traditional declaratory judgment action," *Beshear v. Haydon Bridge Co*., 416 S.W.3d 280, 287 (Ky. 2013), the Singletons misunderstand their ability to name the Commonwealth itself as a party.  In *Beshear*, the plaintiffs sued for declaratory and injunctive relief on claims that budgetary actions violated the Kentucky Constitution; in order to maintain a suit against the Commonwealth, they sued Governor Beshear in his official capacity and State Budget Director Mary Lassiter in her official capacity.  They did not assert a claim against the Commonwealth itself.  *Id.* at 280.  Here, the Singletons may maintain their action against the Commonwealth and CHFS/DMS *through* their claims against Secretary Haynes, but not directly against the State or the Cabinet.

However, the Singletons' claims against Secretary Haynes in her official capacity may survive the motions to dismiss if they fall within the scope of *Ex parte Young*.  The Defendants allege *Ex parte Young* does not apply to the Singletons' claims because the Singletons seek retrospective, rather than prospective relief.  "The Eleventh Amendment bars a plaintiff from seeking retrospective relief against a state official in his or her official capacity, but it does not bar the district court from examining the allegations to determine whether there is an ongoing violation of federal law."  *Diaz v. Michigan Dept. of Corrections*, 703 F.3d 956, 965 (6th Cir. 2013).  Sixth Circuit case law implies that a plaintiff's claim for equitable, prospective relief may continue where the plaintiff "sufficiently alleged an ongoing violation of federal law to maintain

24

his equitable claim." *Id.* at 966. In this case, the Singletons allege the Defendants impermissibly claim a right to certain annuity funds, and they seek to prevent the Defendants from collecting any more than the amount paid by the state on behalf of the annuitant Mary Singleton. [*See* R. 27 at 17.] This is a prospective, rather than retrospective, request, and the Defendants' allegations that the Singletons request to go back in time and amend their mother's annuity are unfounded. [*See* R. 33-1 at 18-19.]

Even so, the analysis continues, as the Defendants contend the *Will* doctrine also bars the Singletons' claims. [*See* R. 33-1 at 21-23.] In *Will v. Michigan Department of State Police*, the United States Supreme Court determined that neither States nor state officials acting in their official capacities are "persons" within the meaning of § 1983. *See* 491 U.S. 58, 71 (1989). However, as the Sixth Circuit has recognized, the *Will* court clarified the implications of its holding as it relates to § 1983 suits for injunctive relief in a footnote: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity' actions for prospective relief are not treated as actions against the State." *Id.* at 71 n. 10. *See also Cox v. Shelby State Comm. College*, 48 F. App'x 500, 503-04 (6th Cir. 2002) (recognizing this Supreme Court guidance set forth in *Will* footnote 10). As a result, the Sixth Circuit has upheld a district court's determination that "the Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983." *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000).

The Singletons' claims against Secretary Haynes in her official capacity are for prospective injunctive relief, not damages. [*See* discussion, *supra*, at 19-22 and R. 27 at 17.] Therefore, they are not barred by the *Will* doctrine and, instead, are the mechanism by which the

Singletons may properly seek a judicial determination against a state agency regarding alleged violations of their constitutional rights. *See, e.g., Graham*, 473 U.S. at 165-66. In the end, these claims survive the Defendants' 12(b) motions.

III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' motions to dismiss, or in the alternative, for summary judgment [R. 31; R. 33] are **CONSTRUED** as motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b); and

2. The Defendants' motions [R. 31; R. 33] are **GRANTED IN PART**. The following claims are **DISMISSED** from the lawsuit:

    a. The § 1983 claims brought by the Singletons in their individual capacities;

    b. All claims against the five John Doe Defendants;

    c. The claims for money damages brought against Defendant Marchetta Carmicle in her individual capacity, pursuant to Count VI, the alleged violation of the Kentucky Constitution; and

    d. The claims for declaratory and injunctive relief against:

        (i) the Commonwealth of Kentucky;

        (ii) the Cabinet for Health and Family Services;

        (iii) the Department for Medicaid Services; and

        (iv) Marchetta Carmicle in her official capacity.

3. The Defendants' motions [R. 31; and R. 33] are also **DENIED IN PART**. The following claims may proceed going forward:

a.  The claims for money damages brought against Defendant Marchetta Carmicle in her

individual capacity, pursuant to Counts I, II, III, IV, V, and VII; and

b.  The claims for declaratory and injunctive relief against Secretary Audrey Tayse

Haynes in her official capacity.

This the 31st day of March, 2016.

Gregory F. Van Tatenhove
United States District Judge